UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM GERICS,

Plaintiff,

v.

ALEX TREVINO, ET AL.,

Defendants.

_____/

Case No. 15-cv-12922

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [#76] IN PART AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [#78]**

## I. INTRODUCTION

Plaintiff Adam Gerics initiated this § 1983 action on August 17, 2015, alleging several constitutional rights violations at the hands of three City of Flint police officers. Dkt. No. 1; *see* Dkt. No. 36 (Amended Complaint). Defendants -- Officers Joseph Hall, Bobby Fowlkes, and Felix Trevino -- have moved for summary judgment on all Counts.

Present before the Court is Defendants' Joint Motion for Summary Judgment. Dkt. No. 76. Plaintiff has also filed a Cross-Motion for Summary Judgment against Defendant Hall on three Counts set forth in the Complaint. A hearing on the Motions was held on June 11, 2019. For the reasons set forth

below, the Court will GRANT Defendants' Motion [#76] IN PART and DENY Plaintiff's Motion [#78].

## II. BACKGROUND

This case arises out of an ongoing feud between Plaintiff and his neighbor, Tim Monahan. Dkt. No. 76, p. 11 (Pg. ID 475). According to Monahan, Plaintiff began harassing him in 2010, frequently calling him profane and derogatory names such as "HIV positive pedophile," "cocksucker," and "shithead." *Id.* Often, Plaintiff would make these comments by means of a megaphone or by putting up signs on properties throughout the neighborhood. *Id.* at pp. 11-12 (Pg. ID 475-76). On a number of occasions, Monahan attempted to file a complaint with the City of Flint Police Department, but was told that officers could not intervene because this was a civil matter, and not a criminal one. *Id.* at p. 12 (Pg. ID 476). However, in the fall of 2013, Monahan had an opportunity to speak directly with the Police Chief. *Id.* Based on Monahan's representations, the Police Chief agreed to send officers to investigate. *Id.*

On September 27, 2013, Defendant Hall met Monahan near Plaintiff's property. *Id.* Plaintiff, who was standing outside his home, noticed the two men talking and began recording them with his cellphone. *Id.* at p. 13 (Pg. ID 477). At the time, Plaintiff did not know Defendant Hall was a police officer. *Id.* Thus, Plaintiff addressed Monahan, stating: "And this dude's a crook, he likes to rip

people off, families especially.  I got it on video of him returning my property.  It's on Facebook all over the place.  Total thief, took two water heaters and a dryer." *Id.*  Plaintiff then went on to say, "Why are you in front of my fucking house anyways?  Fucking harassment." *Id.*  At that point, Defendant Hall approached Plaintiff and placed him under arrest for a breach of the peace.  *Id.*

During the arrest, Defendant Hall grabbed Plaintiff's cellphone and threw it on the ground.  Dkt. No. 83, p. 9 (Pg. ID 920).  Defendant Fowlkes arrived on the scene soon after to help secure Plaintiff.  *Id.* at p. 10 (Pg. ID 921).  Defendant Trevino was observing from his vehicle a half block away.  Dkt. No. 76, p. 13 (Pg. ID 477).  Following the arrest, Plaintiff was transported to the City Lockup, where he was booked and held.  Dkt. No. 83, p. 9 (Pg. ID 921).  In holding, Plaintiff was searched by a Sheriff Deputy, who found what was later determined to be marijuana.  Dkt. No. 76, p. 14 (Pg. ID 478).  Despite this, Plaintiff was released from custody three days later with only a citation for breach of the peace.  *Id.*

On August 17, 2015, nearly two years after being released from police custody, Plaintiff filed the instant suit claiming, among other things, wrongful arrest.  *Id.*  Roughly one month later, the Genesee County Prosecutor's Office initiated criminal charges against Plaintiff stemming from that September 2013 arrest.  *Id.*  Specifically, Plaintiff was charged with Furnishing Contraband to Prisoners (Count One), Resisting Arrest (Count Two), and Possession of Marijuana

(Count Three).  A state court judge found sufficient probable cause for the prosecutor to proceed on those charges; however, a second judge later suppressed the evidence after finding Plaintiff's arrest violated the Fourth Amendment.  Dkt. No. 76, p. 15 (Pg. ID 479); Dkt. No. 83, p. 10 (Pg. ID 921).

Thereafter, Plaintiff filed an Amended Complaint in this case asserting nine Counts: Retaliatory Arrest (Count One), Unlawful Arrest (Count Two), Excessive Force (Count Three), Unlawful Seizure of Cellphone (Count Four), Failure to Intervene (Count Five), Malicious Prosecution (Count Six), Retaliatory Prosecution (Count Seven), Abuse of Process (Count Eight), and Municipal Liability (Count Nine).  Dkt. No. 36.  The Court Dismissed Counts Eight and Nine on March 19, 2018.  *See* Dkt. No. 46.  Defendants now move for summary judgment on all remaining Counts on the basis of qualified immunity.  Dkt. No. 76.  Plaintiff moves for summary judgment against Defendant Hall on Counts Two, Four, and Six.  *See* Dkt. No. 78.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must view the facts, and draw

reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## IV. DISCUSSION

"The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Tuong*, 707 F.3d 675, 680 (6th Cir. 2013). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (quoting *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)). "Once a defendant invokes qualified immunity, the plaintiff bears the burden to show that qualified immunity is inappropriate." *Id.* at 681.

Here, Defendants move for summary judgment on Counts One through Seven of Plaintiff's Complaint on the basis of qualified immunity. Plaintiff, in

turn, has moved for summary judgment against Defendant Hall on Counts Two, Four, and Six. The parties address these claims out of order. The Court's analysis will follow suit.

### A. Defendants are Entitled to Qualified Immunity on Plaintiff's Malicious Prosecution Claim (Count Six).

In Count Six of the Complaint, Plaintiff alleges Defendants initiated criminal proceedings against him without any belief that he was guilty of the charged crimes. Plaintiff maintains that Defendants were motivated by malice, vexation, and retaliation. However, Plaintiff fails to demonstrate how Defendants unlawfully influenced his prosecution.

"To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor."

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotations and citations omitted).

"[A]n officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Id.* at 314. Even the submission of inaccurate materials does not automatically render an officer liable. Rather, "in order to show that [an officer] participated in or that his actions influenced the commencement of criminal proceedings as required to sustain a claim of malicious prosecution, Plaintiffs [are] required to present some evidence that the impact of [the officer's] misstatements and falsehoods in his investigatory materials extended beyond the Plaintiffs' initial arrest and ultimately influenced the Plaintiffs' continued detention." *Id.* at 316. Similarly, "in order to establish that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious-prosecution claim, the Plaintiffs [are] required to present evidence that [the officer] (1) stated a deliberate falsehood or showed reckless disregard for the truth at the hearing and (2) that the allegedly false or omitted information was material to the court's finding of probable cause." *Id.* at 312 (internal quotations omitted).

Here, Plaintiff's malicious prosecution claim against Defendant Trevino is predicated solely on the fact that he issued Plaintiff's citation for breach of the peace, allegedly without cause. But the charges that the Genesee County Prosecutor's Office brought against Plaintiff did not include any such violation. *See* Dkt. No. 76-11. Furthermore, Plaintiff has not shown that Defendant Trevino had any contact with the Genesee County Prosecutor's Office, such as to encourage the pursuit of criminal charges. Hence, Defendant Trevino cannot be said to have influenced Plaintiff's prosecution.

Plaintiff's malicious prosecution claim against Defendant Fowlkes also lacks merit. His claim is based on the fact that Defendant Fowlkes testified at his preliminary hearing on the resisting arrest charge. Dkt. No. 83, p. 15 (Pg. ID 926). While Plaintiff contends that Defendant Fowlkes' testimony cannot be trusted, he offers no supporting evidence other than his own assertion. This does not satisfy Plaintiff's burden of proving Defendant Fowlkes stated a deliberate falsehood or showed reckless disregard for the truth.

Likewise, Plaintiff's malicious prosecution claim against Defendant Hall fails. Plaintiff notes that Defendant Hall's police report surrounding the September 2013 arrest contained an inaccuracy. Specifically, Defendant Hall recanted the fact that he personally heard Plaintiff yell a sexual innuendo at Monahan on the day of

the arrest. *See* Dkt. No. 78-1, pp. 62-63 (Pg. ID 688-689). But even so, none of the charges brought by the Genesee County Prosecutor's Office were founded on this inaccuracy. Indeed, the exact words that Plaintiff spoke that day in no way relate to furnishing contraband to prisoners, resisting arrest, or the possession of marijuana. Thus, there is no evidence that the impact of Defendant Hall's misstatement extended beyond Plaintiff's initial arrest. Furthermore, this single misstatement, alone, does not suggest that Defendant Hall's testimony at Plaintiff's preliminary hearing on the separate resisting arrest issue was fabricated. This is especially true considering the corroborating testimony from Defendant Fowlkes, whose credibility has not been undercut.

Finally, it is important to acknowledge that of the three crimes Plaintiff was charged with, probable cause for the two marijuana-related charges was based not on the testimony of Defendants Fowlkes and Hall, but instead on the testimony of non-party Sheriff Deputy Aric Watts, who found contraband on Plaintiff while he was in holding. *See* Dkt. No. 76-12, pp. 7-8 (Pg. ID 587-88) ("[A]s to Count One . . . Furnishing Contraband to . . . Prisoners in Jail . . . the Court is relying particularly upon the testimony of . . . Deputy Aric Watts.").[1] Accordingly, the

---

[1] To be clear, because the marijuana possession charge was a misdemeanor, the state court judge did not make a probable cause finding on that count. Nevertheless, the furnishing contraband to prisoners in jail charge was predicated on Plaintiff possessing marijuana. Hence, prosecutors necessarily had probable

Court finds that no reasonable juror could conclude that Defendants unlawfully made, influenced, or participated in Plaintiff's prosecution. Defendants are therefore entitled to qualified immunity on Count Six of the Complaint.

### B. Defendants are Entitled to Qualified Immunity on Plaintiff's Retaliatory Prosecution Claim (Count Seven).

In Count Seven of the Complaint, Plaintiff asserts that Defendants initiated criminal proceedings against him in retaliation for the instant lawsuit. However, Plaintiff fails to carry his burden of proof.

"It is clearly established that 'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.'" *Everson v. Calhoun Cty.*, 407 F. App'x 885, 887 (6th Cir. 2011) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To establish a retaliatory prosecution claim, a plaintiff must demonstrate: (1) that he was engaged in protected speech, (2) that he suffered an injury as a result of the defendant's actions, and (3) causation. *Id.* With respect to the causation element, a plaintiff must show that their protected conduct was a motivating factor in the defendant's decision to pursue criminal prosecution. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Arnett v. Myers*,

---

cause to pursue the marijuana possession charge based on Deputy Watts' testimony.

281 F.3d 552, 560-61 (6th Cir. 2002) ("Circumstantial evidence, like the timing of events . . . may support this inference.").

Here, it is undisputed that when Plaintiff filed this lawsuit he was engaging in protected conduct under the First Amendment. *See Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment."). Nevertheless, Plaintiff points to no evidence demonstrating that Defendants directed or influenced the Genesee County Prosecutor's Office to file criminal charges in response to the lawsuit. Certainly, the timing of the charges -- two years after the arrest and one month after Plaintiff filed the instant suit -- is cause for suspicion. But nothing in the record suggests this was anything other than an independent decision by the prosecutor. And critically, the Genesee County Prosecutor's Office is a not a party to this case. Accordingly, no reasonable juror could find in favor of Plaintiff on his retaliatory prosecution claim. Defendants are thus entitled to qualified immunity on Count Seven of the Complaint.

### C. Only Defendants Fowlkes and Trevino are Entitled to Qualified Immunity on Plaintiff's False Arrest Claim (Count Two).

In Count Two of the Complaint, Plaintiff claims Defendants intentionally and knowingly arrested him without probable cause. While Plaintiff has presented enough evidence to create a material question of fact surrounding whether

Defendant Hall had probable cause for the arrest, he has not demonstrated that Defendants Fowlkes and Trevino were personally involved, such as to impute liability under § 1983.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes*, 625 F.3d at 305 (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). Determining if probable cause exists requires an examination of the "totality of the circumstances and whether the facts and circumstances of which [an officer] had knowledge at the moment of the arrest were sufficient to warrant a prudent person . . . in believing . . . that the seized individual had committed . . . an offense." *Id.* (internal quotations omitted). Generally, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008).

As an initial matter, Defendants assert, and Plaintiff does not refute, that it was Defendant Hall, alone, who arrested Plaintiff. *See* Dkt. No. 76, pp. 23-24 (Pg.

ID 487-88). In fact, Plaintiff testified that only one officer was present on the scene at the immediate time of his arrest. Dkt. No. 76-2, p. 10 (Pg. ID 511). Because liability under § 1983 requires proof of personal involvement, Defendants Fowlkes and Trevino are entitled to qualified immunity on Count Two of the Complaint. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

With respect to Defendant Hall, there is enough evidence in the record to create a material question of fact surrounding the issue of probable cause. Section 31-12(5) of the Flint, Michigan Code of Ordinances makes it a crime to:

> Persist[] in disturbing the public peace and quiet by loud or aggressive conduct, having once been clearly informed by the persons affected that he is in fact unreasonably causing such a disturbance, provided, however, that notice need not be given when such persons affected reasonably believe that to do so would constitute a risk of their personal safety.

Flint Code of Ord. § 31-12(5). Defendants argue that Defendant Hall had probable cause to arrest Plaintiff for breach of the peace based on his observations and Monahan's report of Plaintiff's past misconduct. Alternatively, Defendants argue that Defendant Hall had probable cause to arrest Plaintiff for the related crimes of harassment, as defined under Flint, Michigan Code of Ordinances § 31-12(8),[2]

---

[2] Knowingly harass[] any other person. Harass is defined as any repeated nonverbal conduct which is specifically intended to frighten, embarrass, or anger the person or persons who are the subject of such conduct, or which the person

and/or criminal stalking, as defined under Michigan Compiled Laws § 750.411h(1)(c).[3] *See Voyticky*, 412 F.3d at 676 ("[W]here no probable cause exists to arrest a plaintiff for a particular crime, but . . . probable cause exists to arrest that plaintiff for a related offense, the plaintiff cannot prevail in a suit alleging wrongful arrest brought pursuant to 42 U.S.C. § 1983."). But a reasonable juror could find otherwise.

On one hand, Defendants assert that prior to Plaintiff's arrest, Monahan told Defendant Hall that he had been experiencing "constant threatening behavior" from Plaintiff. Dkt. No. 76, p. 25 (Pg. ID 489). Some of this behavior included using a megaphone to call Monahan "a loathsome HIV positive pedophile" and other names such as "cocksucker" and "shithead." *Id.* On the day of Plaintiff's arrest, Defendant Hall observed Plaintiff criticize Monahan, referring to him as a crook and a thief, and question Monahan, asking him why he was standing in front of Plaintiff's "fucking" home. Though not necessarily harassment or a breach of public peace in and of itself, this observation arguably supported Monahan's

accused has reason to know is likely to produce such reactions or any repeated verbal communication which by its very utterance inflicts injury or incites an immediate breach of peace. Flint Code. of Ord. § 31-12(8).

[3] [W]illful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. MCL § 750.411h(1)(d).

claims of a contentious relationship with Plaintiff. At the same time, however, Defendant Hall did not witness any of the actions that Monahan complained of, nor did he investigate independent of Monahan's claims. While Defendants are correct that a known informant's statement can support probable cause, even without any additional indicia of reliability, whether it was reasonable for Defendant Hall to rely on Monahan's representations, without much more, is a question of fact properly left to the jury. *See United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) ("[W]e have clearly held that a known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past."). Therefore, Defendant Hall is not entitled to qualified immunity on Count Two of the Complaint.

For similar reasons, Plaintiff's Motion for Summary Judgment on Count Two must be denied. Plaintiff contends that no reasonable juror could find in favor of Defendant Hall because he did not witness any of the acts Monahan accused Plaintiff of committing. But as just discussed, whether Monahan's statements, coupled with Defendant Hall's personal observations, created enough probable cause to arrest Plaintiff, is a question best left for the trier of fact.

In addition, Plaintiff argues that because Defendant Hall acknowledged, after the fact, that he was mistaken in his probable cause determination, this is dispositive of the issue. But Plaintiff's argument misses the mark. Here, it is important to place Defendant Hall's admission in its proper context. Under Michigan state law, officers are not allowed to conduct an arrest for a misdemeanor committed outside of their presence. *See* Dkt. No. 78-1, p. 24 (Pg. ID 650). Thus, when Defendant Hall admitted he lacked probable cause to arrest Plaintiff for violating Flint, Michigan Code of Ordinance § 31-12, he was doing so on the basis that he did not observe the violation first hand.[4] The Sixth Circuit, however, has made clear that a § 1983 false arrest claim turns not on whether a misdemeanor was committed in an officer's presence -- as required by state law -- but instead, on whether the officer had probable cause under the Fourth Amendment to make the arrest. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("Plyes' rights under Kentucky law, including her right as an alleged

---

[4] *See* Dkt. No. 78-1, pp. 56-57 (Pg. ID 682-83):

**Q.** You did not witness a misdemeanor take place on that date, did you?
**A.** I thought I did.
**Q.** But you didn't, right?
**A.** With the information I have today, correct. At the time I thought it was.
**Q.** What information is that that you have today that you didn't have at the time?
**A.** By reading that word for word, I guess I had to see him repeatedly do it. I was under the impression that I just had to witness it once, so I was mistaken. I didn't know that until now.

misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim."). Again, whether Defendant Hall had probable cause to arrest Plaintiff based on his observations and the statements from Monahan is a question of fact best left for the jury.

Finally, Plaintiff asserts that summary judgment should be granted in his favor because the state circuit court judge found that Defendant Hall lacked probable cause for the arrest. But the appropriate inquiry is an objective, forward-looking one based on the perspective of a reasonable officer at the time and on the scene of the arrest. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) ("A reviewing court must assess the existence of probable cause from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (internal quotations omitted). Here, when the evidence is viewed in a light most favorable to Defendants, a reasonable juror could conclude that Defendant Hall had probable cause to arrest Plaintiff for violating Flint, Michigan Code of Ordinances § 31-12 or MCL § 750.411h(1)(d). Accordingly, Plaintiff is not entitled to summary judgment on Count Two of the Complaint.

**D. Only Defendant Trevino is Entitled to Summary Judgment on Plaintiff's Excessive Force Claim (Count Three).**

In Count Three of the Complaint, Plaintiff asserts that Defendants employed unnecessary, unreasonable, and excessive force against him during his arrest. Dkt. No. 36, p. 13 (Pg. ID 153). While a material question of fact remains surrounding Defendants Hall and Fowlkes' use of force, Defendant Trevino had no personal involvement, such as to create liability under § 1983.

"Determining whether the force used to effect a particular seizure is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1889) (internal quotations omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotations and citations omitted). Importantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* (internal quotations and citations

omitted).  Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396-97.

Before addressing the merits of Plaintiff's excessive force allegations, the Court will dismiss any claims made against Defendant Trevino.  Nothing in the record suggests Defendant Trevino took part in Plaintiff's arrest or in securing Plaintiff in the patrol vehicle.  As such, Defendant Trevino lacks the personal involvement necessary for § 1983 liability and is therefore entitled to qualified immunity on Count Three of the Complaint.

With respect to Defendants Hall and Fowlkes, however, a material question of fact remains surrounding whether excessive force was employed.  Defendant Hall's police report states that after securing Plaintiff's hands behind his back, Defendant Fowlkes placed Plaintiff against the front fender of the patrol vehicle.  Dkt. No. 78-7, p. 8 (Pg. ID 888).  When Plaintiff allegedly attempted to raise off the fender and pull away from Defendant Fowlkes, the officers had to secure him on the ground.  *Id.*; *see* Dkt. No. 83-3, p. 24 (Pg. ID 1154) (Preliminary Examination Testimony of Officer Fowlkes) ("He eventually slid off of the front of the vehicle and we had to control him on the street and then secure him in

handcuffs while he was on the street."). Plaintiff maintains that he did not resist arrest, and yet, was forcibly thrown to the ground. *See* Dkt. No. 83, p. 28 (Pg. ID 939).

While it is unclear the amount of force, if any, Defendants Hall and Fowlkes used to take Plaintiff to the ground, a reasonable juror could conclude that it was unnecessary to take such an action considering the non-violent nature of Plaintiff's alleged offense (breach of the peace) and his lack of an immediate threat to the officers. *See Graham*, 490 U.S. at 396. This is especially true in light of the fact that Plaintiff's alleged resistance appeared to be minimal.[5] Accordingly, Defendants Hall and Fowlkes are not entitled to qualified immunity on Count Three of the Complaint.

---

[5] *See* Dkt. No. 83-4, p. 18-19 (Pg. ID 1227-28) (Preliminary Examination Testimony of Officer Hall) ("Yes, he was on the hood, we put your body, your body up against the car, bend you over the hood it deceases your mobility so you can't resist against us, when he started to raise up off of it Officer Fowlkes said 'stop it', laid him on the ground, secured the handcuffs on him, we stood him up, walked him towards Officer Fowlkes' car . . . ."); Dkt. No. 83-3, pp. 28-29 (Pg. ID 1158-59) (Preliminary Examination Testimony of Officer Fowlkes) ("He, like I said, he was laid chest down on the vehicle and we were attempting to handcuff him, he repeatedly moved his upper torso, although we repeatedly gave commands he removed his upper torso and his arms would also move, made it difficult for us to handcuff him.").

### E. Only Defendants Fowlkes and Trevino are Entitled to Qualified Immunity on Plaintiff's Unlawful Seizure Claim (Count Four).

In Count Four of the Complaint, Plaintiff asserts that Defendants seized his cellphone without any lawful basis. Dkt. No. 36, p. 15 (Pg. ID 155). While a material question of fact remains surrounding whether Defendant Hall seized Plaintiff's cellphone, and did so in a unreasonable manner, Defendants Fowlkes and Trevino had no personal involvement, such as to create liability under § 1983.

"The Fourth Amendment protects a person's right to his personal property without interference from the police absent consent or reasonable suspicion or probable cause that a crime has been, will be, or is being committed." *United States v. Deitz*, 577 F.3d 672, 687 (6th Cir. 2009). "Property is seized when there is some meaningful interference with an individual's possessory interests in that property." *Hensley v. Gassman*, 693 F.3d 681, 688 (6th Cir. 2012) (quoting *Soldad v. Cook Cty.*, 506 U.S. 56, 61 (1992)) (internal quotations omitted). But "[a] constitutional violation occurs only where the seizure is objectively unreasonable, a determination that entails a careful balancing of governmental and private interests." *Id.* (internal quotations and citations omitted).

At the outset, the Court will dismiss any claims asserted against Defendants Fowlkes and Trevino under Count Four, as they played no role in the seizure of

Plaintiff's cellphone. Because liability under § 1983 requires personal involvement, Defendants Fowlkes and Trevino are entitled to qualified immunity.

Defendant Hall, on the other hand, is not entitled to summary judgment, as a material question of fact remains surrounding whether his conduct was reasonable when he grabbed and threw Plaintiff's cellphone during the arrest. Defendants argue that Defendant Hall cannot be held liable because the seizure was only temporary, and thus, he did not meaningfully interfere with Plaintiff's possessory interest in the cellphone. *See* Dkt. No. 76, pp. 30-31 (Pg. ID 494-95). But Defendants cite no case law suggesting a Fourth Amendment violation is predicated on the length of a particular seizure, and the Court is not aware of any such law.

Alternatively, Defendants argue that Defendant Hall's seizure was reasonable. *Id.* at p. 31 (Pg. ID 495). Specifically, Defendants contend that the temporary seizure was necessitated by Defendant Hall's interest in safely arresting Plaintiff, who had the cellphone in his hand. *Id.* Though the Court agrees that under these circumstances, Defendant Hall's seizure would likely be reasonable, there is still an open question as to whether Plaintiff's arrest was in fact supported by probable cause. Without resolving that question, the Court cannot conclude that the seizure of Plaintiff's cellphone was justified. Hence, Defendant Hall is not

entitled to qualified immunity on Count Four of the Complaint. For the same reasons, Plaintiff is not entitled to summary judgment against Defendant Hall on Count Four.

### F. Only Defendants Fowlkes and Trevino are Entitled to Qualified Immunity on Plaintiff's Retaliatory Arrest Claim (Count One).

In Count One of the Complaint, Plaintiff alleges Defendants arrested him without cause for exercising his First Amendment right to free speech. Dkt. No. 36, p. 6 (Pg. Id 146). While a material question of fact remains surrounding whether Defendant Hall violated Plaintiff's First Amendment right, Defendants Fowlkes and Trevino played no role in Plaintiff's arrest, such as would make them liable under § 1983.

A First Amendment retaliatory arrest claim entails three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between element one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011). Recently, the Supreme Court has instructed that "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the

arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).[6]  In the absence of probable cause, "the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation." *Id.* at 1725.

To begin, the Court will dismiss any claims alleged against Defendants Fowlkes and Trevino under Count One because they did not take part in Plaintiff's arrest.  As liability under § 1983 requires personal involvement, Defendants Fowlkes and Trevino are entitled to qualified immunity.

The claims against Defendant Hall, however, will not be dismissed. Defendants argue that Defendant Hall cannot be held liable for retaliatory arrest because Plaintiff's verbal conduct towards Tim Monahan was not protected speech under the First Amendment.  Specifically, they assert Plaintiff's words constituted stalking.  *See Armstrong v. Shirvell*, 596 F. App'x 433, 454 (6th Cir. 2015) (holding conduct relevant to stalking, as defined under MCL § 750.411h(1)(d), does not fall within the purview of the First Amendment's protection).  At this juncture, the Court will disagree.

Here, it is undisputed that a motivating factor in Plaintiff's arrest was his speech directed at Monahan.  In fact, he was purportedly arrested for breach of the

---

[6] While not applicable here, the Supreme Court created a narrow exception to this no-probable-cause requirement where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *See Nieves*, 139 S. Ct. at 1727.

peace. But as discussed at length, a material question of fact remains surrounding the issue of probable cause. This is due, in part, to the fact that Defendant Hall did not witness Plaintiff engage in the repeated or continued verbal harassment necessary to rise to the level of criminal stalking under MCL § 750.411h(1)(d). Rather, Defendant Hall witnessed one instance of Plaintiff criticizing Monahan for stealing property. Because a reasonable juror could conclude that Plaintiff's critiques of Monahan did not rise to the level of criminal stalking, and that Defendant Hall arrested Plaintiff in response to protected speech, Defendant Hall is not entitled to qualified immunity on Count One of the Complaint.

### G. Defendants are Entitled to Qualified Immunity on Plaintiff's Failure to Intervene Claim (Count Five).

Finally, in Count Five of the Complaint, Plaintiff claims that Defendants failed to intervene when his First and Fourth Amendment rights were being violated. Dkt. No. 36, pp. 17-18 (Pg. ID 157-58). Now, Plaintiff argues only that Defendants Fowlkes and Trevino are liable under Count Five, and specifically, for failing to intervene in Defendant Hall's alleged unlawful arrest. *See* Dkt. No. 83, p. 32 (Pg. ID 943). Plaintiff, however, has not demonstrated that Defendants Fowlkes and Trevino were in a position to know a constitutional violation had occurred, such as would require them to intervene.

"While officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights, that obligation does not extend to questioning the basis for a fellow officer's reasons for arrest" when they did not observe or have a reason to know the basis for the seizure. *Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001). Here, Plaintiff testified that Defendant Hall was the only officer on the scene at the immediate time of his arrest. It was not until after the arrest took place that Defendant Fowlkes arrived on the scene to assist. Further, there is no indication that either Defendant Fowlkes or Defendant Trevino were in a position to hear the exchange between Plaintiff, Monahan, and Defendant Hall -- which served as the basis for probable cause to arrest. *See* Dkt. No. 76-6, p. 6 (Pg. ID 547); Dkt. No. 76-10, p. 1 (Pg. ID 574). In fact, at the time, both officers were positioned down the block in their vehicles. *See* Dkt. No. 76-6, pp. 5-6 (Pg. ID 546-47). Hence, neither officer had reason to question Defendant Hall's authority to arrest Plaintiff. Accordingly, Defendants are entitled to qualified immunity on Count Five of the Complaint.

## V. CONCLUSION

For the reasons stated herein, the Court will GRANT Defendants' Motion for Summary Judgment [#76] IN PART and DENY Plaintiff's Motion for Summary Judgment [#78].

Counts Five through Nine and Defendant Alex Trevino are DISMISSED WITH PREJUDICE from Plaintiff's Complaint. Counts One, Two, and Four are also DISMISSED against Defendant Bobby Fowlkes WITH PREJUDICE. Counts One through Four remain against Defendant Joseph Hall and Count Three remains against Bobby Fowlkes.

IT IS SO ORDERED.

Dated:        June 12, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 12, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager